## W. E. Pennington v. J. T. Ritchie.

[58 South. 657—57 South. 220.]

1. Vendor and Vendee. *Landlord and tenant. Contract. Validity. Existence of relation.*

  A valid contract may be made between parties to the sale of land, whereby the deferred payments for the land may be treated as rent, and until they are all paid the amount stated in each annual note can be collected as the rental value of the land for the current year.

2. Same.

  But where the vendee goes into possession of land upon a parol agreement for the conveyance of the land and, in pursuance of such agreement, a deed is executed and delivered to him, containing the terms of sale, but nothing is said about rent, and afterwards the vendee agreed to pay to the vendor one bale of cotton "as rent on the place bought of him if I should decide not to take the place and give it up," such a contract does not create the relation of lessor and lessee between the parties, as in such case the sale of land was not rescinded and the title to the land was left in the vendee and the conditions of such contract are too vague, uncertain and indefinite to be enforced.

Appeal from the circuit court of Lincoln county.

Hon. D. M. Miller, Judge.

Suit by W. E. Pennington against J. T. Ritchie. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*M. McCullough,* for appellant.

A deed of conveyance from Ritchie to Pennington, properly executed and delivered, precludes Ritchie from recovering rent from any source in an action at law. The deed is regular in form and the description of the land perfect. The legal title to the land was out of

Ritchie and wife and was in Rockhold. Ritchie's right to recover rent from Rockhold necessitated the existence of the relation of landlord and tenant between them. This deed bars Ritchie in any court of law from any relation of any landlord and tenant with Rockhold. By virtue of this deed the only right left to Ritchie is the equitable right to enforce his vendor's lien. He cannot be the grantor in the deed and the holder of the legal title to the land. In this case it cannot be held that the relation of landlord and tenant existed between Ritchie, the grantor in this deed, and Rockhold, the grantee.

There is no privity of contract between Ritchie and Pennington. Unless some rent contract is proved or shown existing between these two men then the appellant must have a new trial. The want of proof to show this contractual relation between Ritchie and Pennington made it incumbent on the trial judge to grant the peremptory instruction asked by Pennington and refused by the court.

As conclusive on this point see the case of *Ashley* v. *Young,* 79 Miss. 129, 29 So. 822.

*J. H. Sumrall,* for appellee.

In his discussion of the second proposition in his brief, counsel for appellant simply announced his conclusion as to the law controlling a state of facts which is also the product of his own conclusion. He states that "a deed of conveyance from Ritchie to Pennington (probably meaning Rockhold), precluded Ritchie from recovering rent from any source in an action of law"—and again—"Ritchie's right to recover rent from Rockhold necessitated the existence of the relation of landlord and tenant between them"—and again—"He cannot be grantor in the deed and the holder of the legal title to the land."

Counsel in coming to these conclusions evidently did not take into consideration all of the evidence in the case, as the evidence introduced by Ritchie tended to show

that the execution of the deed by Ritchie and wife to Rockhold, and the execution of the rent note by Rockhold to Ritchie, occurred at the same time, the latter immediately following the former, and being a part of the same transaction; the note providing for the payment of cotton to Ritchie "as rent on the place I bought from him, if I should decide not to take the place and give it up," thus it will be seen that the deed not having been acknowledged, and therefore not recordable, amounted only to a contract between Ritchie and Rockhold, and the note having been executed immediately after the deed and relating to the same transaction, must be construed as a part of the contract, and its operation depending only on the happening of a future contingency, which happened right on the heels of the execution of the contract, it became immediately operative and created the relation of landlord and tenant between the parties to the contract, as shown by the testimony of both Pennington and his witness Rockhold, for the moment Rockhold decided to leave the place and rent it to Pennington, the future contingency contemplated by the contract and provided by the note, had happened.

If Pennington really relied upon the fact that Rockhold was in possession of a deed to the land, which he claims was shown to him, when he rented the land from Rockhold, then he should not only have informed himself as to all the provisions of the contract which the form of the deed suggested, but all the evidence shows that he was immediately notified by Ritchie of the existence of the note and its effect, at a time that he admits was "two or three days after he had rented from Rockhold, and before he had gone to any trouble or expense, so he cannot now be heard to dispute the title of his landlord, where he had full knowledge of the situation in time to have extricated himself therefrom, if he had so desired.

As authority for my contention with reference to the binding effect of the terms of the note as a part of the

contract, see *Maynard* v. *Cocke,* 71 Miss. 493, in which this court in construing a similar contract said:

"We should endeavor to construe the contract in such manner as to effectuate the intention of the parties, if that be ascertainable, and give vitality to every part of it if possible." And again—"The true view of the real intention of the parties is this in our opinion, viz.: For the payment of interest notes given by the grantee to his vendor, a security in the shape of an equitable lien upon the agricultural products to be grown upon the premises conveyed was created, and this is absolutely free from objection from any point of observation."

Cook, J., delivered the opinion of the court.

D. B. Rockhold moved on a farm belonging to appellee about the 1st of January, 1909, under an agreement that appellee would sell him the land. About the latter part of March of the same year appellee, Ritchie, executed a deed for the land and delivered it to Rockhold. In the meantime appellant had moved upon the land and was a tenant of Rockold, as share cropper. It appears that some time after the deed had been delivered to Rockold by Richie (Richie says it was fifteen minutes after, while Rockold says it occurred the day following) Rockold informed Richie that he would not live on the land himself, but would rent it, and work at a sawmill himself. Richie was not satisfied with this plan, and insisted that Rockold give him a rent note, agreeing to deliver a bale of cotton in case he should not come back and decide to give up the land. This was agreed to, and the following writing was executed and delivered to Richie: "State of Mississippi, Lincoln County. On or before the 15th day of October, 1909, I promise to pay to J. T. Ritchie one bale of good middling cotton, weighing 500 pounds, as rent on the place bought from him, if I should decide not to take the place and give it up. J. A. Rockhold."

There is some conflict in the evidence concerning appellant's knowledge of the execution of this note before

he contracted with Rockhold for the rent of land. Rock-
hold did rent the land on the share system to W. E. Pen-
nington, and went to work at a sawmill. In the fall, and
after the note became due, Ritchie procured a distress,
and had same levied on the agricultural products raised
on the land by Pennington, who is appellant. Penning-
ton replevied the cotton, and trial was had in the justice
court, which terminated in a judgment in Richie's favor.
There was an appeal to the circuit court, and the result
was the same. Rockold was the owner of the land when
he executed the note agreeing to pay rent on his own
property in case he should "decide not to take the place
and give it up."

The novel question presented here is whether or not
the same man can be grantor of the title to land and at
some future time enter into a contract with the owner
of the title, by the terms of which the owner becomes
the lessee of his own property, and the former owner as-
sumes the qualities and privileges of a lessor. It mat-
ters not that the contract for the payment of rent was
made within fifteen minutes after the sale of the land
had been perfected by the delivery of the deed. If the
contract had the effect of establishing the relationship
of landlord and tenant—lessor and lessee—it would have
the same effect if it had been executed a month later.
It has been decided by this court, and it is undoubtedly
the law, that a contract may be made between parties
to the sale of land, whereby the deferred payments for
the land may be treated as rent, or, in other words, a
contract to convey the land may be dependent upon the
prompt payment of the deferred payments, and until they
are all paid the amount stated in each annual note will
be collected as the rental value of the land for the cur-
rent year.

This is quite a different case, as there is no dispute
about the fact that Rockold went into possession of the
land upon a parol agreement for the conveyance of the

land, and that in pursuance of that agreement a deed was executed and delivered to him, containing the terms of the sale. Mr. Ritchie does not deny this; in fact, he so states in his testimony—that nothing was said about rent, and rent was not thought of until after the deed was safely in Rockhold's pocket. Then it was that he learned of Rockold's purpose to rent the land and work elsewhere himself, and then it was that the so-called rent note was executed at his request. The sale of the land was not rescinded, and the title was left in Rockold; but he (Rockhold) agreed to pay one bale of cotton, "as rent on the place bought from him, if I should decided not to take the place and give it up." If the terms of this note are adhered to, and nothing more is written into the contract, Rockhold could not be declared in default until he had decided not to take the place and followed his decision by a relinquishment of possession and claim of title to the land.

By a most liberal construction, this contract did not create the parties lessee and lessor. The conditions are too uncertain and indefinite, and the whole range of the law does not afford a precedent of sufficient elasticity authorizing us to stretch this vague agreement into a contract creating the relationship of lessor and lessee between Richie and Rockold.

We have not considered the other difficulties in the way of appellee, because this one mountain range is insurmountable, and it cannot be tunneled or flanked by the most ingenious of legal engineers.

*Reversed and remanded.*